## Artiste Permanent Wave Co. v. Hulsman et al.
### (Decided Jan. 28, 1938.)

JOSEPH S. LAWTON and BURKE & LAWTON for appellant.
WOODWARD, DAWSON & HOBSON for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant, a corporation, and appellees, a partner-

ship, are competitors engaged in the operation of their respective beauty shops located in the Starks building in Louisville, Ky. We will refer to appellant as plaintiff and to appellees as defendants according to their respective positions in the lower court.

Plaintiff established its beauty shop and commenced business in the year 1932 on the fourth floor of the Starks building in room 402, and operated there approximately one year or until some time in 1933, when it moved its shop to the second floor of the same building in room No. 288. When it began its business, it had its corporate name, "Artiste Permanent Wave Company," placed on the door of the room in which the business was conducted and operated for a while under that name. But later it chose or selected the name "Artiste Beauty Shoppe" as its trade-name, which name was published and carried in the telephone directory of the city of Louisville from the beginning of its business to the present time, and also had the same name or words placed on the windows of the building fronting the streets and also by an electric sign placed in the window over the door and on its customers' cards, and in the newspapers for a while after it commenced business, but since about January, 1937, it advertised in the newspapers the abbreviated name "Artiste Shoppe," leaving out the word "beauty," but made no changes in its other signs or advertisements.

For four years previous to April, 1937, the defendant Miss Hulsman, was in the employ of plaintiff and acted as manager of its shop, and for two years the other defendant Miss Kamber was assistant manager of plaintiff. However, in April, 1937, defendants resigned their positions with the plaintiff and in June of the same year they established a beauty shop business of their own in the same Starks building and in room No. 402, previously occupied by plaintiff during its first year in business, and selected the name "Art Beauty Shoppe" and are operating their shop in that name. Plaintiff objected to defendants' use of the name "Art Beauty Shoppe" because of its similarity to plaintiff's trade-name, viz., "Artiste Beauty Shoppe," which it had used for four years, with the exception that its corporate name was on the door of its room where its business is conducted. It appears that plaintiff and de-

fendants held various conferences—plaintiff endeavoring to persuade defendants to select some other name for their shop because the similarity of the names "Artiste Beauty Shoppe" and "Art Beauty Shoppe" might be confusing to the public. But defendants refused to select any other name and advertised and are now operating their shop under the name "Art Beauty Shoppe."

Soon thereafter plaintiff brought this action in the Jefferson circuit court seeking to enjoin defendants from using the name "Art Beauty Shoppe." Plaintiff set out in its original petition the history and facts of the establishment of its business in substance as we have indicated above and alleged that defendants selected their trade-name "Art Beauty Shoppe" and located same in the Starks building and in the same room or location formerly occupied by plaintiff for the purpose and intent of defrauding and deceiving the public into believing that defendants' business and beauty parlor is the plaintiff's business and beauty parlor or the same organization, so as to draw away from plaintiff its clientage and promote the business of defendants to plaintiff's detriment and damage.

Later by amended petition plaintiff alleged that soon after it commenced the operation of its shop in the year 1932, it realized that the public might not appreciate the fact that it was engaged in all kinds of beauty treatment operations generally sold and served by beauty culture establishments because of its corporate name, "Artiste Permanent Wave Company," and that the public might think it was engaged only in the business and service of giving permanent wave hair treatment only, whereas in truth and in fact at all times it has and does, in addition to permanent wave hair treatments, give all the other services and treatments generally rendered by such businesses, and in order to properly designate its services and products, it had the name "Artiste Beauty Shoppe" painted in large letters on the six windows facing Walnut street and on the six windows facing the Fourth street side and always had this name in large letters on the windows of its former location on the fourth floor where this name is easily seen by the public from the streets, but that it had always had its corporate name, "Artiste Permanent Wave

Company,'' on the door of the entrance to its place of business; that at all times mentioned the name ''Artiste Beauty Shoppe'' has been listed in the telephone directory designating its place of business in the Starks building, and it had always advertised often and extensively in the newspapers using its corporate name as well as its trade-name and trade-mark of ''Artiste Beauty Shoppe,'' and had always had the name ''Artiste Beauty Shoppe'' on its cards or customers' slips; that since the year 1932 up to the present time its services and products have been known to the public as the ''Artiste Beauty Shoppe'' as well as the ''Artiste Permanent Wave Company,'' but more popularly known to the public and its customers as the ''Artiste Beauty Shoppe,'' and that it had sold its services, wares, and products under the trade-name and trade-mark of ''Artiste Beauty Shoppe,'' all of which had become known to the public, and plaintiff thereby acquired certain rights to the trade-name and trade-mark ''Artiste Beauty Shoppe,'' for the sale of its services and products.

Defendants filed their answer traversing the allegations of the petition and pleaded affirmatively that the two words ''Beauty shop'' are words in general use by hundreds of shop operators in Louisville and throughout the United States generally and that the use thereof is so general that any one has the right to and does apply the use thereof to a shop or place of business where beauty work is done, and, further, that defendants by advertisement and newspaper articles published notice to the public that their shop is locally owned and has no connection with plaintiff's shop.

Only a small amount of evidence was taken but on the whole there is no material conflict in the evidence. It does not materially differ from the pleadings and the facts as we have indicated.

The evidence of Miss Margaret Ames and Mae Walther was taken in behalf of plaintiff. It would serve no good purpose to enter into a detailed recitation of the evidence of plaintiff. Suffice it to say that its evidence tended to support all material facts alleged in the petition. However, Miss Ames, witness for plaintiff, testified that since January 1, 1937, she had advertised

the name of the shop in the newspapers as "Artiste Shoppe," thus dropping the word "beauty," but no changes were made in the telephone directory, on the windows, their electric sign, or customers' cards.

Defendant Miss Hulsman testified that they selected the name "Art Beauty Shoppe" because it accurately described the nature of the work or business performed, but denied any fraudulent intent on their part in the selection of that name. She further said that they explained to their customers and also by newspaper advertisements that the "Art Beauty Shoppe" (defendants' shop) was a separate business and had no connection with plaintiff's shop. She filed newspaper clippings to substantiate her evidence on that point. It was stipulated, however, that plaintiff's shop had been listed in the telephone directory as the "Artiste Beauty Shoppe" since its organization in 1932 to the present time. Referring again to plaintiff's evidence, it was shown that a large part of its business was by appointment by telephone and a great many of its customers seemed to have become confused in the names of the shops.

The case was submitted on the pleadings and evidence and, in an oral opinion delivered by the court which was transcribed and filed with the record, after reciting the facts in substance as stated herein, the court referred to the fact that plaintiff first started with the trade-name "Artiste Permanent Wave Company" (its corporate name) and later shifted to "Artiste Beauty Shoppe," and recently it has begun advertising in the name of "Artiste Shoppe." The court rejected defendants' contention that plaintiff has no right to any trade-name other than its corporate name and pointed out many cases and instances where corporations have established trade-names or trade-marks other than their corporate names. We concur with the chancellor in that conclusion. The chancellor further recognized "a too close · similarity between 'Artiste Shoppe' and 'Art Beauty Shoppe' " and said that were there no other factors in this case the plaintiff would be entitled to its injunction—but that there are other factors, and referring to these factors the court said:

"Now, the fact that plaintiff has changed its oper-

ating name three times since it has been here leads me to believe that it has not sufficiently established a business under the trade name of 'Artiste Beauty Shoppe' to entitle it to protection against the use of the name 'Art Beauty Shoppe.' "

The court refused the injunction and dismissed plaintiff's petition. This appeal follows.

There is no escape from the conclusion that the words "Artiste" and "Art" are so similar as to be calculated to confuse or mislead the public. There are numerous cases where the courts have granted injunctive relief against the use of names less similar than the ones here under consideration.

In the case of U-Drive-It Company v. Wright & Taylor, 270 Ky. 610, 110 S. W. (2d) 449, 454, this court held that the trade-name "You Drive it Francis Garage," and "Francis You Drive It Garage," bore such similarity in nature and character to the name or words "U-Drive-It Company," as entitled the U-Drive-It Company to injunctive relief against the defendants in that action. It must be conceded that the words "Artiste" and "Art" are much more similar and more likely to create confusion than the words or phrases used in the U-Drive-It Company Case, supra. See, also, Churchill Downs Distilling Company v. Churchill Downs, Inc., 262 Ky. 567, 90 S. W. (2d) 1041, and numerous other cases cited in the U-Drive-It Company Case, supra.

Defendants do not seriously contend in their brief and virtually admit that the similarity of the names "Artiste" and "Art" are sufficient to warrant plaintiff the relief sought. But they insist upon an affirmance of the judgment upon the grounds pointed out by the trial court, viz., that because of alleged change of names, advertisements, etc., by the plaintiff it has lost its right to protection to the name "Artiste Beauty Shoppe." This argument is based upon the fact (a) that plaintiff had its corporate name "Artiste Permanent Wave Company" on its door and (b) it had recently changed its newspaper advertisements from "Artiste Beauty Shoppe" to "Artiste Shoppe," leaving out the word "Beauty."

(a) The fact that plaintiff had its corporate name

placed on the door of its place of business does not mitigate against its right to use a trade-name different from the corporate name. It is the duty of all corporations of this state and all foreign corporations doing business in this state to have its corporate name painted or printed in a conspicuous place on its principal place of business. Kentucky Statutes, sec. 576. But this does not mean that if a corporation uses a trade-name or trade-mark different from its corporate name it must discard the latter, nor will it be deprived of its right to protection in the use of its trade-name. Philadelphia Trust, Safe Deposit & Insurance Company v. Philadelphia Trust Company, C. C., 123 F. 534; The Governor and Company of Adventurers of England, Trading into Hudson's Bay v. Hudson Bay Fur Company, D. C., 33 F. (2d) 801.

(b) It is shown by the undisputed evidence that from the beginning of its business in 1932 up to 1937, a period of five years, plaintiff advertised its trade-name in the telephone directory, on six windows, by electric sign, customers' cards, and in the newspapers as "Artiste Beauty Shoppe" with the single exception that since January, 1937, in its newspaper advertisement, it had left out the word "Beauty" and advertised as "Artiste Shoppe."

Even if plaintiff had made the same change in all its other advertisements, in view of its long and well-established use of the word "Artiste" in connection with the generic and descriptive words "Beauty Shoppe," or either of them, it is doubtful that this would have been sufficient to deprive plaintiff of its right to be protected in the use of its original trade-name "Artiste Beauty Shoppe." But having made this slight change in its newspaper advertisements only and having retained its original full trade-name in all of its other advertisements, which were more widely and conspicuously displayed than the newspaper advertisement, it is unreasonable to believe that such trivial change materially, if at all, affected its original trade-name, in view of the fact it retained the key word "Artiste."

In Newport Sand Bank Company v. Monarch Sand Mining Company, 144 Ky. 7, 137 S. W. 784, 33 L. R. A., N. S., 1040, for a number of years plaintiff had designated the sand which is mined and sold by the name

"Newport" followed by numerals indicating different grades of sand. It was held that while the plaintiff could have no exclusive right to the geographical name "Newport," or the use of numbers, yet such combination had acquired a secondary meaning and plaintiff was entitled to be protected in its trade-name. It is thus seen that the word "Newport" was the key word when used in connection with the numerals. Likewise, in the present case, the word "Artiste" is the key word when followed by the word or words "beauty" and/or "shoppe."

In U-Drive-It Company v. Wright & Taylor, supra, it is said:

"The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."

In U-Drive-It Company v. Wright & Taylor, supra, quoting from a case cited therein, it is said:

"Resemblance is a circumstance which is of primary importance for the court to consider; because if the court finds, as it does almost invariably find in such cases as this, that there is no reason for the resemblance except for the purpose of misleading, it will infer that the resemblance is adopted for the purpose of misleading."

In some of the cases cited herein trade-marks, as technically distinguished from trade-names, were involved, but generally the law applicable to one is applicable to the other. In N. K. Fairbank Co. v. Luckel, King & Cake Soap Company, C. C., 106 F. 498, it is pointed out that while a trade-mark appeals to the eye, a trade-name appeals to the ear. However, in either case it is a question of a mental perception and it is not material whether it is perceived through the sense of sight or sense of hearing. It is merely a different process of arriving at the same general result.

The facts of this case measured to the authorities herein cited impel us to the conclusion that plaintiff's trade-name "Artiste Beauty Shoppe" had been in use and advertised for a sufficient time to acquire a second-

ary meaning in the minds of plaintiffs' customers and the public generally, and that the trade-name "Art Beauty Shoppe" selected and being used by the defendants is so similar in character and nature to the trade-name of plaintiff as to constitute an infringement upon the trade-name and rights of plaintiff.

Judgment reversed and remanded for proceedings consistent with this opinion.

Whole court sitting.